## SYLVESTER STEEN V. THE STATE.

No. 16231. Delivered January 17, 1934.
State's Rehearing Denied March 21, 1934.
Reported in 69 S. W. (2d) 144.

The opinion states the case.

*Lamar Bethea,* of Bryan, for appellant.

*Oak McKenzie,* Co. Atty., *Henderson & Hoyle,* Special Prosecuting Attorneys, and *Barron & Ware,* all of Bryan, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to murder; the punishment, confinement in the penitentiary for three years.

This appeal and Jesse Steen v. the State, Opinion No. 16,-232, this day delivered, are companion cases.*

Appellant, who is a negro, had gone to his home in an automobile with his brother Jesse for the purpose of removing his personal effects. A quarrel ensued between appellant and his wife, which resulted in Horace Reed, the constable of the precinct, being called to the house. Stafford Reed, the injured party, accompanied his brother, the constable, to the scene of the difficulty. When they arrived Jesse Steen was sitting in an automobile near the porch and appellant was carrying his personal effects to the car. Stafford Reed, the injured party, entered the house while the constable remained in the yard. According to the testimony of the latter, he commanded appellant to quit quarreling with his wife and leave the place. At this juncture, we quote from the testimony of the witness as follows: "And then he (appellant) started to talking back to me and he went outside and one word brought on another. I asked him 'Can't you say yes sir to a white man' and he said something else. He had a crank in his hand and started to the front end of the car and said something else to me, and I says 'What was it you said,' and he turned around with the crank and said 'I said yeah' and had the crank in his hand and drawn back and I hit him with my pistol and then he called for his brother. Then his brother (Jesse), got out of the car and I heard a lick—you see Sylvester (appellant) had done clinched me then and I had my back toward the car, and I heard a lick about that time, and then when he called his brother I just wheeled Sylvester around and saw Stafford fall."

The witness further testified that his pistol flew out of his

hand as he hit appellant and dropped on the porch; that he finally disengaged himself from appellant and secured the pistol; that appellant grasped him around the waist from behind and called to Jesse to come to his aid; that responding, Jesse wrench the gun from his hand; that placing the gun in his belt, Jesse walked away, accompanied by appellant; that he asked the parties to let him back his car out of the way before they left, which they did; that appellant and Jesse then drove away in the car with his pistol; that he pursued them, and upon overtaking them, deliberately ran into their car and wrecked it; that they got out of the car and ran away. The injured party testified that while in the house he heard someone call for help, and that he stepped out on the porch to see what the trouble was. He said that he found appellant and the constable engaged in a scuffle, and that as he approached them, Jesse Steen struck him across the body with a Winchester, knocking him to the ground; and that as he tried to get up, Jesse struck him on the head with the gun, rendering him unconscious. The testimony on the part of the state was to the effect that the "outer table" of the skull was fractured, and that the wound resulted in the confinement of the injured party in a hospital for several days. Moreover, there was testimony to the effect that the gun in the manner in which it was used was capable of producing death.

Testifying in his own behalf, appellant declared that the constable made an unprovoked attack upon him with his pistol, striking him on the head two or three times. He said that while he and the constable were fighting, Stafford Reed, the injured party, struck him over the constable's shoulder with some character of instrument, and that he struck the injured party with an automobile crank. He testified that after this occurrence he called to his brother Jesse, who was sitting in the automobile, to come to his aid, and that, in response to his call, Jesse helped him disarm the constable. He denied that Jesse struck the injured party with a Winchester and declared that he alone hit him with the automobile crank for the purpose of protecting himself and with no intention of killing him. His testimony was to the further effect that after he and his brother had disarmed the constable they left the scene of the difficulty and were pursued and run down by him in his automobile.

We think appellant's contention that the evidence is not sufficient to support the conviction should be sustained. Appellant had ample opportunity to shoot the injured party and his brother after he had secured the pistol, but made no attempt to shoot either of them. The state's testimony fails to.

show that appellant was engaged in any character of difficulty with the injured party, and unmistakably demonstrates that Jesse Steen assaulted him upon an independent impulse. There was no proof that appellant, in any manner, encouraged Jesse Steen to assault the injured party, nor that the assault was made by Jesse Steen in pursuance of an agreement with appellant. Under the circumstances, if Jesse had the intent to kill the injured party, such intent was not imputable to appellant. Ordinarily the accused is to be judged by his own intent and not by the intent of another in a difficulty, unless he adopts and ratifies the intent of such other by aiding him by acts or encouraging him by words or gestures. Branch's Annotated Penal Code, sec. 691; Bibby v. State, 65 S. W., 195.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The state files an earnest motion for rehearing, in the light of which we have again reviewed the facts.

The case was reversed because we were unable to find testimony supporting the proposition that if Jesse Steen acted with malice aforethought in making an assault upon Stafford Reed, there was any concert of action or agreement, or acting together in such assault on the part of this appellant with his brother Jesse. It must not be lost sight of, in trying to understand the testimony, that this whole difficulty took place at night, and it not moonlit. The record discloses that there was an examining trial of this appellant, and that Horace Reed testified at same, and when the facts were fresh in his mind,—that he hit appellant on the head with his pistol because appellant said "Yeah" to him, and turned with an automobile crank in his hand. Horace said he had told appellant to go on away from his wife's house, and appellant started toward the front of his car with said crank in his hand. We quote from the examining trial testimony: "I said something to him, and he said 'yeah.' He had the crank, an auto crank. It was in his hand. I asked him if he could say yes sir to a white man, and he mumbled something I could not understand. I asked him what he said and he said 'yeah,' that is what I said,' and started turning. And then started turning towards me. About

four feet from me. The crank was still in his hand. Then I hit him with my gun, and tried to hit him on the head. I could not say if I hit him or not. I tried to hit as he was turning around towards me with that crank. My gun flew out of my hand, someway. I did not know how. He came right on into me and clinched."

No witness for the state testified that after Horace hit appellant on the head with his pistol, appellant did more than to clinch him with both hands and try to hold him. Horace was evidently trying to get his pistol which he said flew out of his hands and on to the porch when he hit appellant with it. Relative to what appellant was trying to do at this juncture, Horace testified: "He was trying to keep me from getting loose from him. * * * He had both hands around me. * * * I got hold of the pistol first on the gallery and picked it up. * * * Jesse did not interfere with mine and Sylvester's tussle until Sylvester called him the second time, and that was after me and Sylvester had scuffled off the end of the gallery onto the ground. * * * When Sylvester called his brother the second time he came over and helped him. When Jesse came to help his brother, the two of them taken the pistol away from me. No, they did not strike me a blow. * * * They just went back to their car and left there."

Evidently during this struggle between Horace and appellant in the darkness, was when Jesse got out of the car, after being twice called to for help by appellant, and, as Stafford came toward the struggling pair, Jesse then,—as the state claims,—struck Stafford with the rifle. If appellant was then struggling to keep Horace from getting the pistol, as the evidence cogently suggests, and Horace had gotten it,—a necessary inference from the fact that the pistol had been thrown on the porch when Horace struck appellant on the head,—and they had struggled off the porch, and Horace still had the pistol,—it would appear perfectly reasonable that appellant's appeal to his brother for help would have for its purpose self-protection, and to take the pistol away from Horace, which in fact was done by the two of them. Jesse Steen struck Stafford with the rifle and came on to help his brother, as appellant asked him to.

We have sifted the evidence trying to find something to furnish support to the theory that in calling to his brother to come and help him under the circumstances, appellant intended that his brother should strike Stafford Reed with the rifle, or intended thereby to make himself a principal in an attack whose necessity, if at all, arose immediately, and was not the result of any pre-arrangement or understanding, or concerted action

between appellant and his brother. We have been unable to find such testimony.

We are constrained to overrule the state's motion, and it is so ordered.

*Overruled.*

*(Page 361 of this volume).